IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

Southern Division

SHERMAN FIELDING III, on behalf
of himself and all others similarly situated,

     Plaintiff,

v.                         **CLASS ACTION**

FCA US LLC,             Case No. 23-cv-10691

     Defendant.

_____/

## **CLASS ACTION COMPLAINT**

Plaintiff Sherman Fielding III ("Fielding" or "Plaintiff"), on behalf of himself and all others similarly situated, by and through the undersigned counsel of record, hereby sues FCA US LLC ("Defendant"), and, for his Complaint, states as follows:

## **INTRODUCTION**

1.    This action arises from the sale or lease of thousands of vehicles manufactured by Defendant, which were leased and sold throughout the United States and came equipped with a defect in the High Pressure Fuel Pump ("HPFP") (the "Defect"). These defective HPFPs were manufactured and placed in certain Jeep and Ram vehicles, specifically 2020 through 2022 Model Year Jeep Wranglers; 2021 through 2022 Model Year Jeep Gladiators; and 2020 through 2022 Model Year Ram 1500 Pickups (collectively, the "Defective Vehicles").

2.      The Defective Vehicles were sold or leased pursuant to express and implied warranties.  These warranties assured customers that the vehicles were free from defects and were properly equipped for the use for which they were intended. These warranties also promised that Defendant would repair defects at no cost to customers.  At the time that the Defective Vehicles were sold or leased by the Defendant directly and through its authorized agents, the Defective Vehicles were in violation of express warranties.

3.      As a direct result of Defendant's practices, Plaintiff and the other members of this proposed Class have suffered injury in fact, including, but not limited to, economic damages and have lost money and/or property.

4.      Simply put, Plaintiff and all members of the proposed Class paid a premium for their vehicles and were harmed by being sold vehicles with a defective HPFP.  Plaintiff and members of the proposed Class have suffered the consequences of an innate—though not readily apparent—defect that secretly existed in the Defective Vehicles at the time of sale (or lease) and which began damaging the Defective Vehicles upon first use.  Plaintiff and members of the proposed Class were, thus, injured at the point of sale and throughout their ownership of the Defective Vehicles and paid far more than they would have if Defendant had disclosed the Defect prior to the underlying transactions.

## **PARTIES, JURISDICTION, AND VENUE**

5.      Plaintiff Sherman Fielding III is a resident of the state of Florida, is over the age of eighteen (18), and is otherwise *sui juris*.  Plaintiff brings this action individually and on behalf of all others similarly situated.

6.      Defendant FCA US LLC is a Delaware limited liability company with its principal place of business located in Auburn Hills, Michigan.  Defendant FCA US LLC has a single member, Stellantis N.V., a Dutch corporation headquartered in Amsterdam, Netherlands.  Therefore, for purposes of diversity of citizenship, FCA US LLC is deemed to be a citizen of a foreign state.

7.      Defendant, through its various entities, including Jeep and Ram, designs, manufactures, markets, distributes, and sells its vehicles in this District and multiple other locations in the United States and worldwide.  Defendant and/or its agents designed, manufactured, and installed the HPFPs in the Defective Vehicles. Defendant also developed and disseminated the owner's manuals, warranty booklets, advertisements, and other promotional materials pertaining to the Defective Vehicles.  Importantly, Defendant owns the Jeep and Ram brands.

8.      This Court has personal jurisdiction over Defendant FCA US LLC insofar as FCA US, LLC's principal place of business is located at 1000 Chrysler Drive, Auburn Hills, Michigan.  Upon information and belief, the Oakland County headquarters is the "nerve center" of FCA US LLC.

9.      Pursuant to Michigan Compiled Laws Section 600.711, "The carrying on of a continuous and systematic part of its general business within the state." creates general personal jurisdiction over a corporation—and has been equally applied as to limited liability companies.  Thus, this Court has general personal jurisdiction over Defendant FCA US LLC.

10.      Accordingly, the exercise of general personal jurisdiction over Defendant FCA US LLC does not offend "traditional notions of fair play and substantial justice," under the Due Process Clause of the United States Constitution.

11.      This Court has subject-matter jurisdiction over the instant case pursuant to 28 United States Code Section 1332(a) insofar as this is a dispute in which Plaintiff's individual damages exceed $75,000.00, exclusive of interest and costs.

12.      Moreover, there is complete diversity of citizenship between Plaintiff (a Florida resident) and Defendant (a foreign resident for purposes of diversity).

13.      This Court has subject-matter jurisdiction over the instant case pursuant to 28 United States Code Section 1332(d) insofar as Plaintiff is a citizen of Florida and Defendant is deemed to be a citizen of a foreign state for purposes of diversity of citizenship.  Furthermore, there are more than 100 members of the proposed Class—one news outlet reported that 60,413 vehicles were recalled.[1]  As a result,

---

[1]   https://moparinsiders.com/recall-60413-units-of-ecodiesel-models-for-possible-high-pressure-fuel-pump-failure/ (last accessed February 20, 2023).

the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, as some of these vehicles had a manufacturer's suggested retail price of nearly $90,000.00.

14.    Publicly available data make clear that the particular Defective Vehicle models are most popular in states *other than Michigan*, thus it is likely that much less than 1/3 of the proposed Class are citizens of Michigan.  Hence, this Court has subject-matter jurisdiction under 28 United States Code 1332(d).

15.    In addition to diversity jurisdiction, this Court has subject-matter jurisdiction pursuant to 28 United States Code Section 1331 insofar as this Complaint contains a Magnuson-Moss Warranty Act, contained at 15 United States Code Section 2301, *et seq.* and the complaint seeks damages in a minimum amount in excess of $50,000.00.  This Court would, therefore, have subject-matter jurisdiction over the State law claims under 28 United States Code Section 1367, known as supplemental jurisdiction.

16.    Venue is proper in this District pursuant to 28 United States Code Section 1391 insofar as this District is where FCA US LLC is subject to the personal jurisdiction of this Court.  Additionally, this is the district where FCA US LLC's headquarters are located, making this the District of "residence" of Defendant. Further, this is the District in which the Defective Vehicles were designed.  In

addition, the Ram 1500s were manufactured at the Warren Truck Assembly Plant in Warren, Michigan.

17.     All conditions precedent to bringing the instant action have occurred, been performed, and/or have otherwise been excused, satisfied, or waived.

18.     Plaintiff hired the undersigned counsel to pursue his claims and is obligated to pay a reasonable fee for legal services.

## FACTUAL ALLEGATIONS

19.     For years, Defendant has designed, manufactured, distributed, imported, warranted, marketed, advertised, serviced, and sold, directly or indirectly through dealers and other retail outlets, thousands of Defective Vehicles throughout the United States.

### A. The Defective Vehicles

20.     For the purposes of this Complaint, the Defective Vehicles consist of certain (i) 2020 through 2022 Model Year Jeep Wranglers, (ii) 2021 through 2022 Model Year Jeep Gladiators, and (iii) 2020 through 2022 Model Year Ram 1500 Pickups.  All vehicles falling under this Defective Vehicle group were manufactured with the defective HPFP.

21.     Plaintiff and members of the proposed Class are the intended purchasers of the Defective Vehicles and the intended beneficiaries of Defendant's warranties related to the Defective Vehicles.

**B. Plaintiff's Defective Vehicle**

22.     On or about November 26, 2021, Plaintiff purchased a new 2021 Jeep Wrangler (JL), VIN 1C4HJXDM5MW860954 (the "Wrangler"), for approximately $88,336.08.  Plaintiff purchased the Wrangler from Hollywood Chrysler Jeep, one of Defendant's authorized dealerships in Hollywood, Florida.   The Wrangler currently has 25,333 miles on it.

23.     Plaintiff used his Wrangler primarily for regular personal use.  Plaintiff also provided his Wrangler for use on ride share applications.

24.     In fact, Plaintiff was first notified of the Defect from one such ride-share application, only after the Wrangler failed a safety inspection.

25.     As a direct result of the Defect, the Wrangler was deemed unfit for use on the ride-share application.

26.     Due to safety concerns for himself and his family, including two (2) minor children, Plaintiff has been unable to drive the Wrangler since learning of the Defect—the extremely expensive vehicle simply sits undriven due to the Defect.

27.     As such, and because Defendant is unable to fix the Defect, the Wrangler has sat unused in Plaintiff's driveway for approximately six months—so far.

28.     The Wrangler contained the defective HPFP when it left Defendant's care and when Plaintiff purchased it.

### C. The Warranty

29.     In conjunction with the purchase of the Wrangler, Defendant provided Plaintiff a written warranty (the "Warranty").   A true and correct copy of the Warranty is attached hereto as **Exhibit A**.

30.     The Warranty covers vehicles "for 36 months from the date it begins or for 36,000 miles on the odometer, whichever occurs first" (the "Warranty Period"). Exh. A pp. 7, 17.  It is undisputable that Plaintiff's Wrangler is within the Warranty Period.

31.     Any "purchaser for use of the vehicle" is covered by the Warranty. Exh A. p. 6.  It is undisputed that Plaintiff and his Wrangler are covered under the Warranty.

32.     The Warranty continues:

The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation. There is no list of covered parts since the only exceptions are tires and headphones.  These warranty repairs or adjustments, including all parts and labor connected with them, will be made by an authorized dealer at no charge, using new or remanufactured parts.  You pay nothing for these repairs.

Exh. A p. 6.  It is undisputed that the defective HPFP is covered by the Warranty.

33.     Upon information and belief, Defendant provided all members of the proposed Class warranties with the same or similar language.

34.     Despite the express provisions in the Warranty, Plaintiff's Wrangler and other Class Defective Vehicles remain unrepaired and, therefore, unsafe to drive.

**D. Defendant Finally Effectuates a Recall but Still Can't Fix the Defect.**

35.     After Plaintiff was forced to find out about the defective HPFP from a third party, Defendant finally admitted the presence of the defect with a safety recall notice (the "Notice").  A true and correct copy of the Notice is attached hereto as **Exhibit B**.

36.     The Notice indicates that the Defect "exists in certain 2020 through 2022 Model Year (JL) Jeep® Wrangler, 2021 through 2022 Model Year (JT) Jeep® Gladiator and 2020 through 2022 Model Year (DT) Ram 1500 Pickup vehicles." Exh. B.

37.     The Notice warns of the severe dangers of the Defect.  The relevant portion of the Notice states as follows:

> The High Pressure Fuel Pump (HPFP) on your vehicle may fail prematurely.  A HPFP failure may introduce internally failed component debris into the fuel system potentially causing fuel starvation.  **Fuel starvation may result in an unexpected loss of motor power, which can cause a vehicle crash without prior warning.**

*Id.* (emphasis in original).

38.     The Notice also expressly states that "**The remedy for this condition is not currently available.**"  *Id* (emphasis in original).

39.     Despite the Warranty provided to Plaintiff and Class members, Defendant is undisputedly unable to remedy the Defect.  The Warranty has thus failed in its essential purpose.

[COMPLAINT CONTINUES ON NEXT PAGE]

### E. Defendant Knew Durability and Superiority were Material to Consumers and Made Representations About the Same.

40.     Defendant's 2021 Jeep Wrangler brochure boasts of Jeep's "one-of-a-kind" "ability to overcome anything the road puts before you."[2]



---

[2]     2021    Jeep    Wrangler    brochure,    at    4,    available    at https://cdn.dealereprocess.org/cdn/brochures/jeep/2021-wrangler.pdf (last accessed February 20, 2023).

41.    Defendant's 2021 Jeep Gladiator brochure claims that it can "diligently

[keep] up with hard daily use in industry and recreation alike."[3]



---

[3]    2021    Jeep    Gladiator    brochure,    at    2,    available    at
https://cdn.dealereprocess.org/cdn/brochures/jeep/2021-gladiator.pdf (last accessed
February 20, 2023).

42.     And, Defendant's 2021 Ram 1500 Pickup brochure raves of its durability, capability, and efficiency.[4]



---

[4]     2021 Ram 1500 Pickup brochure, at 2, available at https://cdn.dealereprocess.org/cdn/brochures/ram/2021-1500.pdf (last accessed February 20, 2023).

43.     Unfortunately, the Defective Vehicles were neither durable nor performed to Defendant's promises[5] because the Defective Vehicles were sold/leased with a defective HPFP.

44.     Any reasonable consumer would have been misled by Defendant's representations.

**F. The Defect Poses an Unreasonable Safety Risk to Consumers**

45.     As admitted by Defendant (Exh. B), the failures in the HPFP can occur without warning and result in the Defective Vehicles stalling and/or stopping in the middle of the road or on a busy highway, thereby stranding the riders, and exposing them to a myriad of dangers, including potentially life-threatening crashes.

46.     Defendant has long known that the Defective Vehicles contain the Defect.  Defendant has exclusive access to information about the defects through its dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other sources of aggregate information about the problem.  In contrast, the Defect was not known or reasonably discoverable by Plaintiff and Class members prior to purchase and without experiencing the defect firsthand and exposing themselves to an unreasonable safety risk.

_____

[5] Upon information and belief, the brochures for each year and model of the Defective Vehicles contain materially similar representations.  For the sake of brevity, only the 2021 brochures are included herein.

47.     Defendant owes a duty to disclose the Defect and the associated repair costs to Defective Vehicle owners, among other reasons, because the defect poses an unreasonable safety hazard; because Defendant has exclusive knowledge or access to material facts about the Defective Vehicles; and because the Defects that are not known or reasonably discoverable by Plaintiff and Class members.

48.     As a result of Defendant's practices, Plaintiff and members of the proposed Class purchased Vehicles that they otherwise would not have purchased; paid more for those Vehicles than they would have otherwise paid; have incurred damages because the Defect has diminished the value of the Defective Vehicles; were subjected to an unreasonable risk to their safety; and unnecessarily paid, and will continue to pay, repair costs as a result of the Defect.

**G. Tolling of the Statute of Limitations**

49.     Until shortly before the filing of this Complaint, Plaintiff and other Class Members had no way of knowing about Defendant's conduct with respect to their Defective Vehicles.

50.     As pleaded herein, Defendant knew or should have known of and failed to disclose a major, inherent product defect, and thus any imposition of "durational limitations" on the warranty breaches or claims alleged herein constitute "overreaching," and therefore any such durational limitations are unconscionable. When a manufacturer is aware that its product is inherently defective, but the buyer

has no notice of or ability to detect the problem, there is, therefore, a substantial disparity in the parties' relevant bargaining power. In such a case, Plaintiff's acceptance of any limitations on his/her contractual remedies, including any warranty disclaimers, cannot be said to be "knowing" or "voluntary," and thereby renders such limitations ineffective. Defendant's superior knowledge of the Defect over the weaker-situated Plaintiff and members of the proposed Class demonstrates that the underlying vehicle transactions involved elements of deception such that there was significant unconscionability in the bargaining process, and any durational limitations that Defendant may purport to assert on Plaintiff's claims are unconscionable as a matter of law. This truly is a real-life example of asymmetric information available to the Parties—Plaintiff and other members of the proposed Class had no way of knowing, and all information was in the hands of Defendant.

51. With respect to Defective Vehicles that have not experienced a HPFP failure, Plaintiff and other members of the proposed Class did not discover and could not reasonably have discovered that their Defective Vehicles are defective, that the durability and performance of their Defective Vehicles is impaired by this defect and incompatibility and that such durability and performance is far less than Defendant promised, or that, as a result of the foregoing, Plaintiff and other members of the proposed Class overpaid for their vehicles, the value of their vehicles is diminished, and/or their vehicles will require costly modification to avoid a catastrophic even

more costly failure, and that any such modifications will impair other qualities of the Defective Vehicles that formed a material part of the bargain between the parties in the purchase of the Defective Vehicles by Plaintiff and other members of the proposed Class.

52.    With respect to Defective Vehicles that have experienced an HPFP failure prior to the filing of this Complaint, Plaintiff and other members of the proposed Class could not reasonably have discovered that their HPFP failure was due to a defect known to Defendant or that Defendant should have known about but failed to advise customers regarding same.

53.    Within the time period of any applicable statutes of limitation or repose, Plaintiff and members of the proposed Class could not have discovered the Defect through the exercise of reasonable diligence.

54.    Purchasers, including Plaintiff and other members of the proposed Class, could not reasonably discover and could not have reasonably known of facts that would have caused a reasonable person to suspect that Defendant did not report information within their knowledge to consumers, dealerships, or relevant authorities.  In fact, Plaintiff had to learn of the defective nature of the HPFP from a third-party shortly before this action was filed.

55.    All applicable statutes of limitation and repose have also been tolled by Defendant's denial of the facts alleged herein throughout the time period relevant to this action.

56.    Defendant's conduct in designing, manufacturing, marketing, and selling the Defective Vehicles created an ongoing duty to disclose to Plaintiff and other Class members the true character, quality, and nature of the durability and performance of Defective Vehicles and true cause of the HPFP failure.  Instead, Defendant failed to disclose or recklessly disregarded the foregoing facts.  As a result, Defendant is estopped from relying on any statutes of limitation or repose as a defense in this action.

57.    For the foregoing reasons, all applicable statutes of limitation and repose have been tolled by operation of the discovery rule and by Defendant's concealment with respect to all claims against Defendant; and Defendant is estopped from asserting any such defenses in this action.

## <u>CLASS ACTION ALLEGATIONS</u>

58.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the Classes of similarly situated individuals defined as follows:

**The Nationwide Class:**[6]

All persons or entities in the United States, including the District of Columbia, Puerto Rico, Guam, American Samoa, the Northern Mariana Islands, and the United States Virgin Islands, who are current or former owners and/or lessees of a (i) 2020 through 2022 Model Year Jeep Wrangler, (ii) 2021 through 2022 Model Year Jeep Gladiator, or (iii) 2020 through 2022 Model Year Ram 1500 Pickup; manufactured with the Defect, purchased and/or leased from any Defendant-authorized dealership in the United States or its territories through the date of final judgment.[7]

**The Florida Subclass:**

All persons or entities who are current or former owners and/or lessees of a (i) 2020 through 2022 Model Year Jeep Wrangler, (ii) 2021 through 2022 Model Year Jeep Gladiator, or (iii) 2020 through 2022 Model Year Ram 1500 Pickup; manufactured with the Defect, purchased and/or leased from any Defendant-authorized dealership in Florida through the date of final judgment.

59.     Alternatively, Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the Classes of similarly situated individuals defined as follows:

**The Alternative Nationwide Class**:

All persons or entities in the United States, including the District of Columbia, Puerto Rico, Guam, American Samoa, the Northern Mariana Islands, and the United States Virgin Islands, who are current or former owners and/or lessees of a (i) 2020 through 2022 Model Year Jeep Wrangler, (ii) 2021 through 2022 Model Year Jeep Gladiator, or

---

[6] To the maximum extent possible, along with the Alternative Nationwide Class, the Nationwide Class is referred to herein collectively as the "Nationwide Classes."  To the maximum extent possible, along with the Alternative Florida Subclass, the Florida Subclass is referred to herein collectively as the "Florida Subclasses."  To the maximum extent possible, the Nationwide Classes and the Florida Subclasses are collectively referred to as "the Class."

[7] The relevant time period for all classes is from date that the Defective Vehicle models were first sold in the United States and its territories to the present.

(iii) 2020 through 2022 Model Year Ram 1500 Pickup; manufactured with the Defect, purchased and/or leased from any Defendant-authorized dealership in the United States or its territories, and whose vehicle remains under warranty, through the date of final judgment.

**The Alternative Florida Subclass**:
All persons or entities who are current or former owners and/or lessees of a (i) 2020 through 2022 Model Year Jeep Wrangler, (ii) 2021 through 2022 Model Year Jeep Gladiator, or (iii) 2020 through 2022 Model Year Ram 1500 Pickup; manufactured with the Defect, purchased and/or leased from any Defendant-authorized dealership in Florida, and whose vehicle remains under warranty, through the date of final judgment.

60. **Class Exclusions**: The following people are excluded from the Class: 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers, and directors; 3) persons who properly execute and file a timely request for exclusion from the Class; 4) the legal representatives, successors, or assigns of any such excluded persons; 5) Plaintiff's counsel and Defendant's counsel; and 6) any person whom Defendant can prove through affirmative evidence is not protected under the Warranty.

61. **Numerosity (Rule 23(a)(1))**: Although Plaintiff does not know the exact size of the Class, since said information is in the exclusive control of Defendant, it is evident that the Class is so numerous that joinder of all members

into one action is impracticable.  Based upon reporting related to the recall, there are at least 60,000 members of the proposed Class.  *See* n.1, *supra*.

62.    **Typicality (Rule 23(a)(3))**: Plaintiff's claims are typical of the claims that would be asserted by other members of the Class in that, in proving his claims, Plaintiff will simultaneously prove the claims of all Class members.  Plaintiff and each Class member was sold and/or leased a Defective Vehicle, each manufactured with the same Defect.  Plaintiff's claims are typical of those of all members of the Class.  Plaintiff and all members of the Class were damaged by the same conduct of Defendant as complained of herein.

63.    **Commonality and Predominance (Rule 23(a)(2))**:  Plaintiff's and Class members' claims raise predominantly factual and legal questions that can be answered for all Class members through a single Class-wide proceeding.  Questions of law and fact arising out of Defendant's conduct are common to all members of the Class, and such common issues of law and fact predominate over any questions affecting only individual members of the Class.  For example, to resolve the claims, it will be necessary to answer the following predominant common questions, each of which can be answered through common, generalized evidence:

(a) Whether Defendant engaged in the conduct alleged herein;

(b) Whether Defendant knew about the defect and the inherent problems related thereto, and if so, how long Defendant knew or should have known as much;

(c) Whether Defendant designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Defective Vehicles into the stream of commerce in the United States, including Florida;

(d) Whether the Defendant's HPFPs that are the subject of this complaint are defective such that they are not fit for ordinary consumer use;

(e) Whether Defendant omitted material facts about the quality, durability, and vehicle longevity of the Defective Vehicles;

(f) Whether Defendant designed, manufactured, marketed, and distributed Defective Vehicles with defective or otherwise inadequate HPFP systems;

(g) Whether Defendant's conduct constitutes breach of contract or warranty, as asserted herein; and

(h) Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, what amount.

64.     **Adequacy (Rule 23(a)(4)):** Plaintiff will fairly and adequately protect the interests of the Class that he represents because it is in his best interests to prosecute the claims alleged herein to obtain full redress due to him for the illegal conduct of which he complains.  His interests do not conflict with the interests of the respective Class because one or more questions of law and/or fact regarding liability are common to all class members and by prevailing on her own claims, Plaintiff necessarily will establish liability to other class members.  Plaintiff will fairly and adequately represent the interests of the Class and has no interests that are antagonistic to the interests of Class members.  Plaintiff has retained counsel experienced in class action litigation and complex civil litigation to prosecute this action on behalf of the Class.

65.   **Superiority (Rule 23(b)(3))**: With respect to Federal Rule of Civil Procedure 23(b)(3), a class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted herein, given that common questions of law and fact predominate over any individual questions that may arise, and significant economies of time, effort, and expense will inure to the benefit of the Court and the Parties in litigating the common issues on a Class-wide basis instead of a repetitive individual basis.  Many Class members' individual damage claims may be too small to make individual litigation an economically viable alternative, and few Class members have an interest in individually controlling the prosecution of a separate action.  Despite the relatively small size of many individual Class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a Class action on a cost-effective basis, especially when compared with repetitive individual litigation.  Given the size of individual Class members' claims, few Class members could afford to seek legal redress individually for the wrongs Defendant committed against them.  When the liability of Defendant is adjudicated, claims of all members of the Class can be determined by the Court.  This action will facilitate the orderly and expeditious administration of the Class's claims, economies of time, effort, and expense will be fostered and uniformity of outcome will be ensured.  Without a class action, the Class members will continue to suffer damages

and Defendant's violations of law will proceed without remedy while Defendant continues to reap and retain the proceeds of its wrongful conduct. And, no unusual difficulties are likely to be encountered in the management of this class action. The forum is desirable because this is the District in which the Defective Vehicles were designed and because the Defendant is headquartered in Michigan.

66. **Ascertainability**: Members of the Class can be identified, and Class membership ascertained objectively through Defendant's records, specifically, Plaintiff will be able to ascertain whether and to whom Defendant sold Defective Vehicles. In fact, Defendant is already in possession of a list of Class members because each was previously sent the Notice. In addition, Defendant has the VIN numbers for each of the Defective Vehicles, and current ownership can be determined accordingly. Moreover, since vehicle ownership is tracked by State Departments of Transportation, there are records from which all record owners of the Defective Vehicles may be obtained.

67. Plaintiff thus satisfies the numerosity, commonality, typicality, and adequacy prerequisites for suing as a representative party and the predominance and superiority requirements of Federal Rule of Civil Procedure 23.

## COUNT I
## <u>BREACH OF EXPRESS WARRANTY</u>
(On behalf of Plaintiff and the proposed Nationwide Classes)

68.    Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1 through 67 above as if fully set forth herein.

69.    Through its Warranty, Defendant agreed to provide an express written warranty directly to Plaintiff and members of the proposed Class, warranting to them that Defendant would repair and/or replace defects in material and/or workmanship free of charge that occurred during the applicable warranty periods.  Defendant provided all purchasers and lessees of the Defective Vehicles with the same express warranties described herein, which became part of the basis of the bargain.

70.    The HPFPs in the Defective Vehicles are covered by the Warranties that Defendant provided to all purchasers and lessors of Defective Vehicles. Because Defendant does not have the required parts to fix the defect, Defendant breached the Warranty by failing to repair and/or replace Plaintiff's and other Class members' defective HPFP as promised by the Warranty.

71.    The Warranty failed in its essential purpose because Defendant is unable to repair the Defective Vehicles.

72.    Prior to the filing of this action, Defendant knew or should have known of the Defect.  Defendant was aware of repeated customer complaints and repair

requests, concerning the HPFP defect in the Defective Vehicles.  Defendant even sent Notice of the Defect to Plaintiff and members of the proposed Class.

73.    As a result of Defendant's actions, Plaintiff and members of the proposed Class have suffered economic damages, including, but not limited to costly repairs, loss of Defective Vehicle use, substantial loss in value and resale value of the Defective Vehicles, and other related damages.

74.    Defendant's attempt to disclaim or limit these express warranties unenforceable under the circumstances here.  Specifically, Defendant's warranty limitations and exclusions are unenforceable because it knowingly sold a defective product without informing consumers about the defect.  Additionally, or in the alternative, the Warranty fails in its essential purpose because Defendant is unable to remedy the Defect.  *See* Exh. B.

75.    The terms of the applicable Warranty are also inadequate to protect Plaintiff and members of the Class.  Among other things, Plaintiff and members of the proposed Class had no meaningful choice in determining these limitations and exclusions, the terms of which unreasonably favored Defendant.  A gross disparity in bargaining power existed between Defendant and members of the proposed Class, and Defendant knew or should have known that the Defective Vehicles were defective at the time of sale and would fail under normal use.

76.     Plaintiff and members of the proposed Class have complied with all obligations under the Warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

**COUNT II**
**<u>UNJUST ENRICHMENT</u>**
**<u>In the Alternative to Count I</u>**
(On behalf of Plaintiff and the proposed Nationwide Classes)

77.     Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1, 3 through 6, 8 through 18, 20, 22 through 28, 35 through 37, 40 through 45, 47 through 49, 51 through 58, 60 through 63(f), 63(h), and 64 through 67 above as if fully set forth herein.

78.     As set forth above, Plaintiff and members of the proposed Class have suffered from a defect that existed in the Defective Vehicles, which began damaging the Defective Vehicles upon the first use of the Defective Vehicles.  Plaintiff and members of the proposed Nationwide Classes are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

79.     As a result of its wrongful omissions, as set forth herein, pertaining to the defects in the Defective Vehicles and the concealment thereof, Defendant charged a higher price for the Defective Vehicles than the Vehicles' true value and Defendant, therefore, obtained monies that rightfully belong to Plaintiff and members of the proposed Class.  Defendant has benefitted from manufacturing, selling, and leasing at an unjust profit Defective Vehicles whose value was

artificially inflated by Defendant's concealment of the defective nature of HPFP and of the Defective Vehicles, and false representations related thereto.

80.    Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and members of the proposed Class, who paid a higher price for their vehicles that actually had lower values.

81.    Defendant has received and retained unjust benefits from the Plaintiff and members of the proposed Class, and inequity has resulted.

82.    It would be inequitable and unconscionable for Defendant to retain these wrongfully obtained benefits.

83.    Because Defendant failed to fully inform customers of the Defect at the time of purchase, purchasers, including Plaintiff and members of the proposed Class, could not reasonably be aware of the true facts concerning the Defective Vehicles and did not benefit from Defendant's misconduct.

84.    Defendant knowingly accepted and retained the unjust benefits of its conduct.

85.    As a result of Defendant's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and members of the proposed Class, in an amount to be proven at trial.

86.     Plaintiff and members of the proposed Class, therefore, seek an order establishing Defendant as a constructive trustee of the profits unjustly obtained, plus interest.

## COUNT III
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
## 15 U.S.C. § 2301, et seq.
(On behalf of Plaintiff and the proposed Nationwide Classes)

87.     Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1 through 67 above as if fully set forth herein.

88.     The Magnuson-Moss Warranty Act provides a private right of action by purchasers of consumer products against retailers who, *inter alia*, fail to comply with the terms of an implied or written warranty. 15 U.S.C. § 2310(d)(1).  As alleged herein, Defendant has failed to comply with its implied warranty of merchantability and/or fitness for a particular purpose with regard to the Defective Vehicles.

89.     Plaintiff and members of the proposed Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

90.     Defendant is a "supplier" and "warrantor" within the meaning of Sections 2301(4)-(5).

91.     The Defective Vehicles are "consumer products" within the meaning of Section 2301(1).

92.     Defendant's express Warranty is a "written warranty" within the meaning of Section 2301(6).

93.    Defendant breached the Warranty by:

a.    Extending warranties to Plaintiff and members of the proposed Class with their purchases of the Defective Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner, but then failing to repair or replace the Defect;

b.    Selling Defective Vehicles to Plaintiff and members of the proposed Class with HPFPs that were defective in material and workmanship, requiring repair or replacement within the warranty periods; and

c.    Failing to honor the express Warranty provided to Plaintiff and members of the proposed Class by repairing or replacing the HPFP, free of charge.

94.    In its capacity as a warrantor, Defendant had (or should have had) knowledge of the inherent defects in the Defective Vehicles.   Any effort by Defendant to limit the implied warranties in a manner that would exclude coverage of the Defective Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Defective Vehicles is null and void.

95.    Any limitations Defendant might seek to impose on their warranties are procedurally unconscionable.   There was unequal bargaining power between Defendant, Plaintiff, and members of the proposed Class, as, at the time of purchase

and lease, Plaintiff and members of the proposed Class had no other options for purchasing basic warranty coverage other than directly from Defendant.

96. Any limitations Defendant might seek to impose on its warranties are substantively unconscionable. Defendant knew or should have known that the Defective Vehicles were defective and would continue to fail during and after any purported expiration of warranties.

97. Defendant failed to disclose these defects to Plaintiff and members of the proposed Class. Therefore, any enforcement of the durational limitations on those warranties is harsh and shocks the conscience, and moreover violates public policy.

98. Plaintiff and each of the members of the proposed Class have had sufficient direct dealings with either Defendant or its agents (*i.e.*, dealerships) to establish privity of contract between Defendant, on the one hand, and Plaintiff and each of the members of the proposed Class, on the other hand. Nevertheless, privity is not required here because Plaintiff and each of the members of the proposed Class are intended third party beneficiaries of contracts between Defendant and its dealers, and specifically, of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements

were designed for and intended to benefit consumers, including Plaintiff and members of the proposed Class.

99.    Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

100.    Nonetheless, Defendant knew or should have known of the defective and non-conforming nature of the Defective Vehicles because it was provided actual and, as described herein, within a reasonable time of Plaintiff's knowledge of the non-conforming and defective nature of the Defective Vehicles, by complaints by Plaintiff or members of the proposed Class to Defendant either orally or in writing, complaints to dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the vehicles for repair to dealerships, intermediate sellers or repair facilities, and by the allegations contained in this Complaint.

101.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.00.  The amount in controversy of this action exceeds the sum of $50,000.00 exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiff, individually and on behalf of the members of the proposed Class, seeks all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.  In addition,

pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other members of the proposed Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other members of the proposed Class in connection with the commencement and prosecution of this action.

102.   Defendant has been afforded notice and a reasonable opportunity to cure the breaches of the Warranty, including when Plaintiff and members of the proposed Class brought their Defective Vehicles in for diagnoses and repair of the defective HPFP.  However, as of the date of this Complaint, Defendant has no way to remedy the Defect.

103.   As a direct and proximate cause of Defendant's breach of the Warranty, Plaintiff and members of the proposed Class sustained damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiff and members of the proposed Class, who are entitled to recover actual damages, consequential damages, specific performance, loss of use, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

## COUNT IV
## FRAUDULENT OMISSION
(On behalf of Plaintiff and the proposed Nationwide Classes)

104.  Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1 through 67 above as if fully set forth herein.

105.  Defendant omitted material facts concerning the Defective Vehicles.

106.  As described above, Defendant made material omissions and affirmative misrepresentations regarding the Defective Vehicles.

107.  Defendant knew these representations were false when made.

108.  The vehicles purchased or leased by Plaintiff and members of the proposed Class were, in fact, defective, unsafe, and unreliable because the defective HPFP causes unsafe conditions, namely that the Defective Vehicles could crash without prior warning.  This presents a safety hazard because it severely affects the driver's ability to control the car.

109.  Defendant had a duty to disclose that these vehicles were defective, unsafe, and unreliable, in that the defective HPFP caused unsafe conditions, because Plaintiff and members of the proposed Class relied on Defendant's representations that the vehicles they were purchasing and/or leasing were safe and free from defects.

110. The aforementioned omissions were material, because, if they had been disclosed, Plaintiff and members of the proposed Class would not have bought, leased, or retained the Defective Vehicles.

111. The aforementioned omissions were also material because they were facts that would typically be relied on by a consumer purchasing, leasing, or retaining a motor vehicle.

112. Defendant intentionally made these false statements in order to sell vehicles at Plaintiff's and members of the proposed Class's expense. Plaintiff and members of the proposed Class relied on Defendants' reputation and representation that the Defective Vehicles were safe in purchasing, leasing, and retaining the Defective Vehicles.

113. Defendant had a duty to disclose the true facts about the Defective Vehicles because they were known and/or readily accessible only to Defendant who had superior knowledge and access to the facts. Importantly, such facts were not known or reasonably discoverable by Plaintiff and members of the Class.

114. As a direct result of Defendant's omissions of material fact, Plaintiff and members of the proposed Class suffered damages.

## COUNT V
## <u>BREACH OF EXPRESS WARRANTY</u>
### <u>Fla. Stat. §§ 672.313 and 680.21</u>
(On behalf of Plaintiff and the proposed Florida Subclasses)

115.   Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1 through 67 as if fully set forth herein.

116.   Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under F.S.A. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

117.   With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under F.S.A. § 680.1031(1)(p).

118.   The Defective Vehicles are and were at all relevant times "goods" within the meaning of F.S.A. §§ 672.105(1) and 680.1031(1)(h).

119.   Defendant provided all purchasers and lessees of the Defective Vehicles with the express warranty described herein, which became a material part of the bargain.

120.   The Warranty assured all purchasers and lessees of the Defective Vehicles that Defendant would repair and/or replace defects in material and/or workmanship free of charge that occurred during the applicable warranty periods.

121.   Defendant manufactured and/or installed the HPFPs in the Defective Vehicles, and HPFPs are covered by the Warranty.  *See* Exh. A.

122.   The Defect at issue in this litigation was present at the time the Defendant Vehicles were sold or leased to Plaintiff and members of the proposed Florida Sublasses.

123.   Plaintiff relied on Defendant's Warranty, which was a material part of the bargain, when purchasing or leasing their Defective Vehicles.

124.   Under the Warranty, Defendant was obligated to correct the Defect in the vehicles owned or leased by Plaintiff and members of the proposed Florida Subclasses.

125.   Although Defendant was obligated to correct the Defect, Defendant has failed to do so.  Because Defendant does not have the required parts to fix the defect, Defendant breached the Warranty by failing to repair and/or replace Plaintiff's and other members of the proposed Florida Subclasses' defective HPFP as promised by the Warranty.

126.   The Warranty failed in its essential purpose because Defendant is unable to repair the Defective Vehicles.

127.   As a result of Defendant's actions, Plaintiff and members of the proposed Florida Subclasses have suffered economic damages, including, but not limited to costly repairs, loss of Defective Vehicle use, substantial loss in value and resale value of the Defective Vehicles, and other related damages.

128.   Defendant's attempt to disclaim or limit the Warranty is unenforceable under the circumstances here.  Specifically, Defendant's warranty limitations and exclusions are unenforceable because it knowingly sold a defective product without informing consumers about the defect.  Additionally, or in the alternative, the Warranty fails in its essential purpose because Defendant is unable to remedy the Defect. *See* Exh. B.

129.   The terms of the applicable Warranty are also inadequate to protect Plaintiff and members of the proposed Florida Subclasses.  Among other things, Plaintiff and members of the proposed Florida Subclasses had no meaningful choice in determining these limitations and exclusions, the terms of which unreasonably favored Defendant.  A gross disparity in bargaining power existed between Defendant and members of the proposed Florida Subclasses, and Defendant knew or should have known that the Defective Vehicles were defective at the time of sale and would fail under normal use.

130.   Plaintiff and members of the proposed Florida Subclasses have complied with all obligations under the Warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

131.   Plaintiff and members of the proposed Florida Subclasses were not required to notify Defendant of the breach because affording Defendant a reasonable

opportunity to cure its breach of written warranty would have been futile. Defendant was also on notice of the Defect from the complaints and service requests it received from Plaintiff and members of the proposed Class, from repairs and/or replacements of the HPFP or components thereof, and through other internal and external sources.

132.    As a direct and proximate result of Defendant's breach of the Warranty, Plaintiff and members of the proposed Florida Subclasses have been damaged in an amount to be proven at trial.

**COUNT VI**
**<u>UNJUST ENRICHMENT</u>**
**<u>In the Alternative to Count V</u>**
(On behalf of Plaintiff and the proposed Florida Subclasses)

133.    Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1, 3 through 6, 8 through 18, 20, 22 through 28, 35 through 38, 40 through 45, 47 through 49, 51 through 58, 60 through 63(f), 63(h), and 64 through 67 above as if fully set forth herein.

134.    As set forth above, Plaintiff and members of the proposed Florida Subclasses have suffered from a defect that existed in the Defective Vehicles, which began damaging the Defective Vehicles upon the first use of the Defective Vehicles. Plaintiff and members of the proposed Florida Subclasses are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

135.    As a result of its wrongful omissions, as set forth herein, pertaining to the defects in the Defective Vehicles and the concealment thereof, Defendant

charged a higher price for the Defective Vehicles than the Vehicles' true value and Defendant, therefore, obtained monies that rightfully belong to Plaintiff and members of the proposed Florida Subclasses. Defendant has benefitted from manufacturing, selling, and leasing at an unjust profit Defective Vehicles whose value was artificially inflated by Defendant's concealment of the defective nature of HPFP and of the Defective Vehicles, and false representations related thereto.

136. Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and members of the proposed Florida Subclasses, who paid a higher price for their vehicles that actually had lower values.

137. Defendant has received and retained unjust benefits from the Plaintiff and members of the proposed Florida Subclasses, and inequity has resulted.

138. It would be inequitable and unconscionable for Defendant to retain these wrongfully obtained benefits.

139. Because Defendant failed to fully inform customers of the Defect at the time of purchase, purchasers, including Plaintiff and members of the proposed Florida Subclasses, could not reasonably be aware of the true facts concerning the Defective Vehicles and did not benefit from Defendant's misconduct.

140. Defendant knowingly accepted and retained the unjust benefits of its conduct.

141.   As a result of Defendant's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and members of the proposed Florida Subclasses, in an amount to be proven at trial.

142.   Plaintiff and members of the proposed Florida Subclasses, therefore, seek an order establishing Defendant as a constructive trustee of the profits unjustly obtained, plus interest.

## COUNT VII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Fla. Stat. §§ 672.314 and 680.212
(On behalf of Plaintiff and the proposed Florida Subclasses)

143.   Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1 through 67 above as if fully set forth herein.

144.   Defendant was at all times a "merchant" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

145.   With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

146.   The Defective Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

147.   A warranty that the Defective Vehicles were in merchantable condition and fit for the ordinary purpose for which the vehicles are used is implied by law, pursuant to Fla. Stat. §§ 672.314 and 680.212.

148.   The Defective Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

149.   It was reasonable to expect that Plaintiff may use, consume, or be affected by the Defective Vehicles.

150.   Plaintiff and many members of the proposed Class were required to stop using their Defective Vehicles altogether because the defective HPFP rendered them unable to drive in a reasonably safe and controlled manner.  For those members of the proposed Class who chose to continue driving their Defective Vehicles despite the Defect, those members of the proposed Class were forced to limit their use to prevent or mitigate the effects of the Defect.

151.   The Defective Vehicles contained an inherent defect that was substantially certain to result in malfunction during the useful life of the product.

152.   Plaintiff and members of the proposed Florida Subclasses were and are third-party beneficiaries to the defendant manufacturer's contracts with Defendant-certified/authorized retailers who sold the Defective Vehicles to Plaintiff.

153.   In addition, or in the alternative, upon information and belief, Plaintiff and members of the proposed Florida Subclasses directly relied upon Defendant's advertising, as alleged above.

154.   Defendant was provided notice of these issues within a reasonable time of Plaintiff's knowledge of the non-conforming or defective nature of the Defective Vehicles, by complaints by members of the proposed Class to Defendant either orally or in writing, complaints to Defendant's dealerships, intermediate sellers, or repair facilities either orally or in writing, and presentation of the vehicles for repair to dealerships or to intermediate sellers or repair facilities regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

155.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and members of the proposed Florida Subclasses have been damaged in an amount to be proven at trial.

**COUNT VIII**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**
(On behalf of Plaintiff and the proposed Nationwide Classes)

156.   Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1 through 67 above as if fully set forth herein.

157.   For every contract, the common law implies a covenant of good faith and fair dealing between parties in performing and enforcing their contractual duties. *See* Restatement (2d) of Contracts §205 (1981).  Under this covenant, each party to a contract has a duty to refrain from doing anything to unfairly interfere with the rights of any other party to receive the intended benefits of the contract.  *Id*.

Good faith and fair dealing includes the duty to exercise one's discretion in carrying out the contract in good faith and duty to act in a commercially reasonable manner.

158.   Through selling and warranting the Defective Vehicles to Plaintiff and members of the proposed Class (Exh. A), Defendant has entered contracts with them. Each of these contracts contains an implied covenant of good faith and fair dealing.

159.   In carrying out their contracts with Plaintiff and members of the proposed Class, Defendant failed to act in good faith or in a commercially reasonable manner, denying Plaintiff and members of the proposed Class some benefit of the bargain originally intended by the parties by, *inter alia*, failing to notify Plaintiff and members of the proposed Class of the Defect in the Defective Vehicles at the time of purchase.

160.   Through the foregoing, Defendant breached the covenant of good faith and fair dealing, thereby causing Plaintiff and members of the proposed Class injuries in an amount to be determined at trial.

### COUNT IX
### VIOLATION OF THE UNFAIR AND DECEPTIVE ACTS AND PRACTICES LAWS
(On behalf of Plaintiff and the proposed Nationwide Classes)

161.   Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1 through 67 above as if fully set forth herein.

162. This is an action for actual damages and injunctive relief or declaratory relief pursuant to the unfair and deceptive acts and practices laws, as adopted in each of the respective states.

163. For the reasons stated herein, Defendant's actions were unfair or deceptive acts or practices in or affecting commerce.

164. The Defect was and is material and would likely affect a consumer's purchase and repair decisions regarding the Defective Vehicles. The HPFP defect causes the Defective Vehicles to fail entirely. These failures can occur without warning and result in the Defective Vehicles breaking down in the middle of a highway, thereby stranding the riders, and exposing them to a myriad of dangers. Nonetheless, Defendant completely failed to warn or advise its customers, including Plaintiff and members of the proposed Class, of the Defect.

165. Because the Defect was hidden and Defendant failed to disclose it at the time of purchase, Plaintiff and members of the proposed Class had no reasonable way to avoid their injuries.

166. As set forth above, despite having prior and repeated notice of the above-described Defect, Defendant has engaged in a routine, albeit wrongful course of conduct, in that it:

> a. Manufactured, sold, distributed, and advertised and continued to manufacture, sell, distribute, and advertise Defective Vehicles that

were unsafe, when Defendant knew or should have known such was the case and could have remedied the Defect, but did not;

b. Manufactured, sold, distributed, and advertised and continued to manufacture, sell, distribute, and advertise Defective Vehicles with a defect that was material, and introduced internally failed component debris into the fuel system, potentially causing fuel starvation and resulting in unexpected loss of motive power, when Defendant knew or should have known such was the case and could have remedied the Defect, but did not;

c. Systematically failed to disclose to and warn Plaintiff and Class members that the Defective Vehicles had a material defect that causes the introduction of internally failed component debris into the fuel system, potentially causing fuel starvation and resulting in unexpected loss of motive power; and

d. Continued to manufacture, market, advertise, distribute, and sell the Defective Vehicles to consumers with an express written warranty attempting to disclaim certain implied warranties and/or damages, when it knew that the Defective Vehicles would not withstand normal operation.

167.   By engaging in the foregoing course of conduct, Defendant has caused consumers, including Plaintiff and members of the proposed Class, to be aggrieved and suffer ascertainable losses and damage, in that, among other things, Defendant's wrongful course of conduct systematically:

    a.  Caused Plaintiff and members of the proposed Class to pay premium prices for a defective product; pay a greater price for a product than they would have; or to pay for a product they entirely would not have purchased had they been warned or advised about the defect; and

    b.  Reduced the value of the Defective Vehicles purchased by Plaintiff and members of the proposed Class.

168.   Based on the foregoing course of conduct, Defendant has committed acts or practices in trade or commerce which offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to consumers; or Defendant has committed acts or practices which have caused, or are likely to cause, consumer injury, which is substantial, not outweighed by any countervailing benefits to consumers or competition that the practice produces, and an injury that consumers themselves could not reasonably have avoided.  Therefore, Defendant has violated the unfair and deceptive acts and practices laws by engaging in unfair acts or practices.

**COUNT X**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE**
**PRACTICES ACT FLA. STAT. § 501.201, *et seq.***
(On behalf of Plaintiff and the proposed Florida Subclasses)

169.   Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1 through 67 above as if fully set forth herein.

170.   This is an action for actual damages and injunctive relief or declaratory relief pursuant to Chapter 501, Part II, Fla. Stat., the "Florida Deceptive and Unfair Trade Practices Act" ("FDUTPA").

171.   The purpose of FDUTPA is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202, Fla. Stat.

172.   At all times material, Plaintiff and Class members were "consumers" within the meaning of FDUTPA, and Defendant has engaged in "trade or commerce" within the meaning of FDUTPA. §§ 501.203 (7)–(8), Fla. Stat.

173.   Section 501.204(1) of FDUTPA imposes a duty on Defendant to refrain from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

174.   Section 501.211 of FDUTPA provides consumers with a private right of action for FDUTPA violations.

175.   The Defect was and is material and would likely affect a consumer's purchase and repair decisions regarding the Defective Vehicles.  The HPFP defect causes the Defective Vehicles to fail entirely.  These failures can occur without warning and result in the Defective Vehicles breaking down in the middle of a highway, thereby stranding the riders, and exposing them to a myriad of dangers. Nonetheless, Defendant completely failed to warn or advise its customers, including Plaintiff and members of the proposed Class, of the Defect.

176.   Because the Defect was hidden and Defendant failed to disclose it at the time of purchase, Plaintiff and members of the proposed Class had no reasonable way to avoid their injuries.

177.   As set forth above, despite having prior and repeated notice of the above-described Defect, Defendant has engaged in a routine, albeit wrongful course of conduct, in that it:

    a.  Manufactured, sold, distributed, and advertised and continued to manufacture, sell, distribute, and advertise Defective Vehicles that were unsafe, when Defendant knew or should have known such was the case and could have remedied the Defect, but did not;

    b.  Manufactured, sold, distributed, and advertised and continued to manufacture, sell, distribute, and advertise Defective Vehicles with a defect that was material, and introduced internally failed

component debris into the fuel system, potentially causing fuel starvation and resulting in unexpected loss of motive power, when Defendant knew or should have known such was the case and could have remedied the Defect, but did not;

c. Systematically failed to disclose to and warn Plaintiff and Class members that the Defective Vehicles had a material defect that causes the introduction of internally failed component debris into the fuel system, potentially causing fuel starvation and resulting in unexpected loss of motive power; and

d. Continued to manufacture, market, advertise, distribute, and sell the Defective Vehicles to consumers with an express written warranty attempting to disclaim certain implied warranties and/or damages, when it knew that the Defective Vehicles would not withstand normal operation.

178. By engaging in the foregoing course of conduct, Defendant has caused consumers, including Plaintiff and members of the proposed Class, to be aggrieved and suffer ascertainable losses and damage, in that, among other things, Defendant's wrongful course of conduct systematically:

a. Caused Plaintiff and the members of the proposed Class to pay premium prices for a defective product; pay a greater price for a

product than they would have; or to pay for a product they entirely would not have purchased had they been warned or advised about the defect; and

b. Reduced the value of the Defective Vehicles purchased by Plaintiff and members of the proposed Class.

179.   Based on the foregoing course of conduct, Defendant has committed acts or practices in trade or commerce which offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to consumers; or Defendant has committed acts or practices which have caused, or are likely to cause, consumer injury, which is substantial, not outweighed by any countervailing benefits to consumers or competition that the practice produces, and an injury that consumers themselves could not reasonably have avoided.  Therefore, Defendant has engaged in unfair acts or practices in violation of Section 501.204(1), Florida Statutes.

## COUNT XI
## STRICT LIABILITY
(On behalf of Plaintiff and the proposed Nationwide Classes)

180.   Plaintiff reaffirms, realleges, and incorporates by reference Paragraphs 1 through 67 above as if fully set forth herein.

181.   The Defective Vehicles sold and placed on the market by Defendant are defective and unreasonably dangerous.

182.   Defendant designed, manufactured, advertised, distributed, and/or sold the Defective Vehicles that were purchased and/or leased by Plaintiff and members of the proposed Class.

183.   The Defect was present in the Defective Vehicles when they left Defendant's care, custody, or control and when Plaintiff and members of the proposed Class purchased and/or leased their Defective Vehicle.

184.   Defendant neither provided adequate warning of the potential harm that might result from the inherent Defect in the Defective Vehicles nor, in the alternative, provided adequate instructions for the safe use of the Defective Vehicles.

185.   Plaintiff and members of the proposed Class were unaware of the defective and unreasonably dangerous condition of the Defective Vehicles, and at a time when such Defective Vehicles were being used for the purposes for which they were intended, were exposed to the dangers of a defective HPFP.  Such dangers include, but are not limited to, an unexpected loss of motive power, which can cause the Defective Vehicles to crash without prior warning.

186.   Defendant knew that its Defective Vehicles would be used without inspection for defects and, by placing them on the market, represented that the Defective Vehicles were safe for use.

187.   Plaintiff and members of the Class were unaware of the hazards and defects in the Defective Vehicles, namely that the Defective Vehicles could crash without prior warning.  This made the Defective Vehicles unsafe for use.

188.   As a direct and proximate result of the Defective Vehicles defective and unreasonably dangerous properties, Plaintiff and members of the proposed Class sustained damages and other losses in an amount to be determined at trial. Defendant's conduct damaged Plaintiff and members of the proposed Class, who are entitled to recover actual damages, consequential damages, specific performance, loss of use, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, individually and on behalf of members of the proposed Class, respectfully requests that this Court:

a.  enter an order certifying the proposed Nationwide Classes and Florida Subclasses, designating Plaintiff as named representative of the Nationwide Classes and Florida Subclasses, and designating the undersigned as Class Counsel;

b.  award to Plaintiff and the Class compensatory, exemplary, statutory, and loss of use damages, including interest, in an amount to be proven at trial;

c.  award any and all remedies provided pursuant to the applicable consumer protection statutes;

d.  declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Defective Vehicles, the repairs made to Defective Vehicles and the sale of replacement parts, or make full restitution to Plaintiff and Class members;

e.  hold Defendant strictly liable for the Defect;

f.  award of attorneys' fees and costs, as allowed by law;

g.  award of pre-judgment and post-judgment interest, as provided by law;

h.  grant leave to amend the Complaint to conform to the evidence produced during discovery and at trial; and

i.  such other relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated: March 24, 2023      Respectfully submitted,

*/s/ Zachary D. Ludens*
Zachary D. Ludens, Esq. (P84239)
Jordan A. Shaw, Esq. (application forthcoming)
Lauren N. Palen, Esq. (application forthcoming)
**ZEBERSKY PAYNE SHAW LEWENZ, LLP**
110 SE 6th St., Suite 2900
Fort Lauderdale, Florida 33301
Tel: 954.989.6333
Fax: 954.989.7781
zludens@zpllp.com
jshaw@zpllp.com
lpalen@zpllp.com
mlomastro@zpllp.com
clanzano@zpllp.com

J. Dennis Card (application forthcoming)
**CONSUMER LAW ORGANIZATION, P.A.**
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408-4520
Tel: 561.822.3446
Fax: 305.574.0132
Dennis@cloorg.com